**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 24, 2020

_Stepec, C. J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 24, 2020

_Susan L Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| DUANE YOUNG, an individual, and all those similarly situated, | ) ) ) ) | |
| Petitioner, | ) ) | No. 97576-1 |
| v. | ) ) ) | |
| TOYOTA MOTOR SALES, U.S.A., a California corporation, | ) ) ) ) | |
| Respondent. | ) ) | Filed September 24, 2020 |

GONZÁLEZ, J.— "Buyer beware" is not the law in the State of Washington. Instead, our Consumer Protection Act (CPA) prohibits unfair or deceptive acts or practices in trade or commerce. RCW 19.86.020. To prevail on a private CPA claim, a plaintiff must establish five elements, the first of which is "an unfair or deceptive act or practice." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986)). Over the years, some authorities have concluded that to prove this first element, the plaintiff necessarily has to prove that the unfair or deceptive act or practice was material in some way.

That conclusion mistakes the sufficient for the necessary. While materiality might be relevant as a matter of fact in some cases, it is not categorically required as a matter of law in all.[1]

FACTS

After a long search for his ideal vehicle, Duane Young bought a new 2014 Toyota Tacoma pickup truck with a limited package of additional features from a dealership in Burlington, Washington. Young paid about $36,000 for the truck. At the time Young was researching his purchase, the Toyota website, Toyota's advertising, and the Monroney label[2] for the 2014 Toyota Tacoma with the limited package incorrectly asserted that the vehicle had an outside temperature display on the rearview mirror along with some other displays. Some of the displays had been

---

[1] A "claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). For example, we found a trustee's "fail[ure]to exercise its independent discretion as an impartial third party with duties to both parties" in nonjudicial foreclosure satisfied the first element. *Id.* at 792. We have also found that deceptive debt collection notices sent to many consumers meets the first element. *Panag*, 166 Wn.2d at 54-55. Similarly, a practice of naming a business as the beneficiary of a deed of trust when it did not meet the statutory definition of a beneficiary was presumptively sufficient to satisfy this first element. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 88-89, 117, 285 P.3d 34 (2012).

[2] A Monroney label "is a label that is required in the United States to be displayed on all new vehicles, and it includes certain official information; for example, standard equipment, optional equipment, crash test rating, fuel economy info[rmation], and a manufacturer's suggested retail price." 2 Verbatim Report of Proceedings (Aug. 1, 2017) at 251.

moved to the dashboard, but the outside temperature display was no longer available.

A Toyota Tacoma truck with the colors and features Young wanted was not available in Eugene, Oregon, where he lived. Young called dealerships in Washington and Oregon until he found what he wanted in Burlington. He negotiated the purchase over the phone, paid a deposit, and, on October 30, 2013, flew to Burlington to pick up his truck.

Shortly before Young flew to Burlington, Toyota Motor Sales U.S.A. (Toyota) realized that its advertising was incorrect and that some 2014 Toyota Tacoma trucks had been shipped with an incorrect Monroney label. On October 22, 2013, the company notified its regional representatives of the error, and the next day made new Monroney labels available to be printed. By the end of the month, Toyota had updated its online advertising. The price of the vehicle did not change. Before the error was corrected, 147 vehicles, including three in Washington State, were sold with the representation that they had the enhanced rearview mirror with the temperature display when they did not.

After realizing its mistake, Toyota offered $100 compensation to each consumer who had purchased a truck without the advertised feature. This was ten times the cost to Toyota of installing the outside temperature gauge during

manufacturing. Young declined that offer and several others, including an offer to replace the display with aftermarket equipment.

After the parties were unable to negotiate a satisfactory resolution, Young brought a CPA suit against Toyota, along with other claims that are not before us. The case went to a two-day bench trial. The trial judge returned a defense verdict. The judge found that Young had failed to prove the first element of his CPA claim because he had not shown Toyota's false statements of fact about the vehicle had the capacity to deceive a substantial portion of the public. The judge also found, among other things, that Young had failed to prove public interest; causation; injury; or that Toyota had violated the automobile dealers practices act, ch. 46.70 RCW.

The Court of Appeals affirmed by divided opinion. *Young v. Toyota Motor Sales, U.S.A.*, 9 Wn. App. 2d 26, 442 P.3d 5 (2019). Relying in part on federal precedent and administrative opinions interpreting the Federal Trade Commission (FTC) Act, the majority below held that to be unfair or deceptive for purposes of the CPA, a misstatement of fact must be material. *Id.* at 33-35 (citing *Cliffdale Assocs.*, 103 F.T.C. 110, app. at 174-84 (F.T.C. 1984)). The Court of Appeals concluded the display, with an estimated value of $10, was financially immaterial to a $36,000 transaction and Young had not established it was material in any other way. *Id.* at 35-36. Judge Fearing joined in result but did not join the majority

opinion. *Id.* at 43 (Fearing, J., concurring). Instead, he wrote separately, noting that no Washington State Supreme Court case had held that to be unfair or deceptive under the CPA, an affirmative misrepresentation of fact must be material. *Id.* at 40-42 (Fearing, J., concurring). We granted review.

ANALYSIS

Under Washington's CPA, "unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020. The legislature has directed that the CPA "be liberally construed that its beneficial purposes may be served." RCW 19.86.920. Both our attorney general and injured plaintiffs may enforce the CPA. RCW 19.86.080, .090. To prevail, a private plaintiff must establish "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag*, 166 Wn.2d at 37 (citing *Hangman Ridge*, 105 Wn.2d at 784). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).

We will sustain findings of fact if substantial evidence supports them. *Soltero v. Wimer*, 159 Wn.2d 428, 433, 150 P.3d 552 (2007) (citing *Nordstrom*

*Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 942, 845 P.2d 1331 (1993)).  The

unchallenged findings here are verities on appeal.  *See Humphrey Indus., Ltd. v.*

*Clay St. Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013) (citing *Davis v.*

*Dep't of Labor & Indus.*, 94 Wn.2d 119, 123, 615 P.2d 1279 (1980)).  Questions of

law are reviewed de novo.  *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d

94, 104, 297 P.3d 677 (2013) (citing *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d

861 (2004)).

### 1.  UNFAIR OR DECEPTIVE ACTS

Where, as here, the relevant operative facts are undisputed, whether that act

or practice is "unfair or deceptive" is a question of law.  *See Leingang v. Pierce*

*County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997).  "A plaintiff

need not show the act in question was intended to deceive, only that it had the

capacity to deceive a substantial portion of the public."  *Panag*, 166 Wn.2d at 47

(citing *Leingang*, 131 Wn.2d at 150).  "Deception exists 'if there is a

representation, omission or practice that is likely to mislead' a reasonable

consumer."  *Id.* at 50 (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d

1431, 1435 (9th Cir. 1986)).

To satisfy the first element of a CPA claim, a plaintiff need not show that

they—or anyone—was in fact deceived.  *Panag*, 166 Wn.2d at 47; *Indoor*

*Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 74-75, 170

P.3d 10 (2007). Instead, the plaintiff must establish that the unfair or deceptive act or practice had the *capacity* to deceive a substantial portion of the public. *Panag*, 166 Wn.2d at 47 (citing *Leingang*, 131 Wn.2d at 150). This is consistent with the foundational case, *Hangman Ridge*, where we observed that "[t]he purpose of the capacity-to-deceive test is to deter deceptive conduct *before* injury occurs." 105 Wn.2d at 785 (citing Jeffrey M. Koontz, *Washington Lawyers under the Purview of the State Consumer Protection Act—The "Entrepreneurial Aspects" Solution— Short v. Demopolis, 103 Wn. 2d 52, 691 P.2d 163 (1984)*, 60 WASH. L. REV. 925, 944 (1985)).

Nor is there a need to prove reliance to establish the first element. *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 317, 553 P.2d 423 (1976) (finding numerous false statements in advertisements violated the CPA) (citing *Vacu-Matic Carburetor Co. v. Federal Trade Comm'n*, 157 F.2d 711 (7th Cir. 1946)); *Panag*, 166 Wn.2d at 47 (finding mailings sent in an attempt to collect subrogation amounts from insureds were deceptive because they "may induce people to remand payment in the mistaken belief they have a legal obligation to do so").

Similarly, materiality is not a necessary component of the first element. *See Hangman Ridge*, 105 Wn.2d at 785. While we have mentioned materiality in passing, generally in noting that a deceptive framing or omitted fact was

sufficiently material to establish the element, we have never found materiality was

necessary as a matter of law. *See, e.g.*, *Indoor Billboard*, 162 Wn.2d at 65-66, 78.

We specifically reject that proposition now.

The misapprehension that materiality is necessary (as opposed to merely

sufficient) seems to have arisen from an out-of-context-statement in an overruled

case, *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158

(1998), *rev'd in part*, 138 Wn.2d 248, 978 P.2d 505 (1999). The *Hiner* court said

in passing that "[i]mplicit in the definition of 'deceptive' is the understanding that

the actor misrepresented something of material importance." *Id.* (emphasis

omitted) (citing *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 327, 814 P.2d 670

(1991)). But both *Hiner* and the case it relied on, *Potter*, concerned an *omitted*

fact, not a positive misrepresentation. *Id.* (citing *Potter*, 62 Wn. App. at 327

(finding it is "unfair or deceptive" to "fail[] to reveal a material fact known to the

seller . . . that the seller in good faith [was] bound to disclose")); *Potter*, 62 Wn.

App. at 327 (finding a seller's failure to reveal a known material fact that the seller

in good faith is bound to disclose may be classified as an unfair or deceptive act

due to its inherent capacity to deceive).[3] Neither of these cases speak to an

---

[3] Several Court of Appeals opinions have followed *Hiner* and *Potter* on this point in dicta. *See, e.g.*, *State v. Kaiser*, 161 Wn. App. 705, 719, 254 P.3d 850 (2011); *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166, 159 P.3d 10 (2007)*, aff'd sub nom. Panag*, 166 Wn.2d 27; *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006). This court quoted *Kaiser*'s summary of the requirements in *Bain*, 175 Wn.2d at 115-16 (quoting

affirmative misrepresentation of fact. As our attorney general noted, "Here, the Court is not addressing whether an omission of fact known to a seller is material; rather, just the converse: Toyota marketed a feature on certain vehicles that was not actually included in the sale." Amicus Br. of Att'y Gen. for State of Wash. at 8. Given the short duration of the mistake, this is a close call. However, we hold that Toyota's affirmative misrepresentation in advertising had the capacity to deceive a substantial portion of the public.

Toyota notes, correctly, that under analogous federal consumer protection law, a showing of materiality may be required. *Cliffdale Assocs.*, 103 F.T.C., app. at 175-76. Since at least 1983, the FTC has interpreted its organic act as requiring any deception be material. *Id.* (citing FTC's 1983 policy statement on deception). Our CPA was modeled on federal consumer protection law, and we do often look to federal laws for guidance. *Klem*, 176 Wn.2d at 787 (citing RCW 19.86.920). But when Washington law is different from its federal counterpart, we give effect to Washington law. *See, e.g.*, *State v. LG Elecs., Inc.*, 186 Wn.2d 1, 9-11, 375 P.3d 636 (2016) (declining to follow the federal statute of limitations analysis based on the plain language and legislative history of our CPA); *Klem*, 176 Wn.2d at 787 ("Although we have been guided by federal interpretations, Washington has

---

*Kaiser*, 161 Wn App. at 719). The issue there was whether it was false or deceptive to designate Mortgage Electronic Registration System Inc. as the beneficiary for purposes of the deed of trust act when it did not meet the statutory requirements. Materiality was not at issue.

developed its own jurisprudence regarding application of Washington's CPA.").

The 1983 FTC policy requiring a showing of materiality predates our leading case,

*Hangman Ridge*, and despite that policy being in existence at the time we

formulated the elements of a private CPA claim, we did not adopt it. Our

legislature has not amended the CPA in response.

A material misrepresentation is likely sufficient to satisfy the first element of

a CPA action. But merely because something is sufficient in one case does not

make it necessary in the next. "Unfair or deceptive" must be liberally construed.

RCW 19.86.920. "'It is impossible to frame definitions which embrace all unfair

practices. There is no limit to human inventiveness in this field. Even if all known

unfair practices were specifically defined and prohibited, it would be at once

necessary to begin over again.'" *Klem*, 176 Wn.2d at 786 (internal quotation

marks omitted) (quoting *Panag*, 166 Wn.2d at 48).

It is undisputed and unchallenged that for nearly two months, both the

Monroney label on the 2014 limited package Toyota Tacoma and its advertising

stated it included an outside temperature gauge and display when it did not.

Toyota's affirmative misrepresentation had the capacity to deceive a substantial

portion of the public and was thus sufficient to meet the first element.

2. CAUSATION AND RELIANCE

We turn now to whether the trial court erred in finding Young did not prove Toyota's acts caused him injury. Finding no error, we affirm.

Young does not challenge the underlying factual determinations the trial judge made in ruling that he failed to show causation. The trial court found that Young was not charged for the missing temperature gauge and display. The trial judge found Young's testimony that he was induced to buy the car because of the missing temperature gauge was not credible for seven separate reasons. Instead, the trial judge found that Young's actions were "much more consistent with someone who learned that Toyota had made a mistake and wanted to take advantage of it, than someone who relied upon that item in good faith, and then did very little until Toyota actually admitted their error." Clerk's Papers at 415. While the details in these findings were not included in the formal findings of fact and conclusions of law, they are all set forth in the trial judge's memorandum decision and were not challenged. As the findings of fact are consistent with the judge's memorandum decision, the findings are read in light of that memorandum decision. *Abbott Corp. v. Warren*, 53 Wn.2d 399, 402, 333 P.2d 932 (1959) (citing *Browning v. Browning*, 46 Wn.2d 538, 283 P.2d 125 (1955)). Taken together, they support the trial court's conclusion that Young failed to establish causation. This is fatal to Young's particular CPA claim.

11

Young attempts to frame the trial court's decision as requiring him to show reliance, which would have been error under *Indoor Billboard*, 162 Wn.2d at 83 (citing *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 311, 858 P.2d 1054 (1993)). The defendant in *Indoor Billboard*, a telecommunications company, had billed a customer a surcharge in a way that deceptively suggested the surcharge was a tax or Federal-Communications-Commission-approved fee the customer was obligated to pay. 162 Wn.2d at 76. The customer was sophisticated and skeptical that the company was in fact required to pass through the surcharge to its customers, but, after a failed attempt to have the charge rescinded, he paid it anyway because he did not want "'to start things off on a sour note.'" *Id.* at 67 (quoting record). We rejected the company's argument that as a matter of law, any false or deceptive act it committed could not be the cause of the plaintiff's injury because the customer could not show he relied on the deceptive act in deciding to pay the bill. *Id.* at 81. We also rejected the customer's argument that he had proved causation by proving he had paid the bill. *Id.* at 83. Instead we held that to establish causation the plaintiff must "establish that but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred" as a matter of fact. *Id.* at 82-83.

It is true that the trial judge mentioned reliance at several points in his detailed memorandum decision. Most relevantly, the trial judge found that Young

12

had not established that in fact he relied on the misrepresentation in deciding to purchase the vehicle. Out of context, this analytical approach would be inconsistent with *Indoor Billboard*. *See* 162 Wn.2d at 83 (citing *Wash. State Physicians Ins. Exch.*, 122 Wn.2d at 311). But Young's own causation theory as pleaded in this particular case was reliance and we find no other substantial theory of causation in his arguments. The trial judge did not hold him to the reliance standard. Reliance was Young's theory and he failed to prove it.

Because we find Young has not shown the trial judge erred in finding he had not met this element, we do not reach the remaining issues. Young's request for attorney fees is denied.

CONCLUSION

We hold that a plaintiff need not show that an affirmative misrepresentation of fact about a product offered for sale was material to satisfy the first element of a CPA claim. However, Young has failed to show that any unfair or deceptive act or practice on the part of the defendant caused him injury. Accordingly, we affirm the courts below in result.

_González, J._

WE CONCUR:

Stephens, C.J.

Johnson, J.

Yu, J.

Madsen, J.
_Result Only_

Montoya-Lewis, J

Owens, J.

Whitener, J.

No. 97576-1

GORDON McCLOUD, J. (concurring)—I concur in most of what the

majority says. This case involves an *affirmative* misrepresentation: Toyota

inaccurately asserted that the 2014 Toyota Tacoma purchased by Duane Young

had an outside temperature gauge. When a case involves an affirmative

misrepresentation, as opposed to a failure to disclose, the plaintiff does not have to

prove materiality in order to establish the first element of a Consumer Protection

Act (CPA) claim. RCW 19.86.020. And like the majority, I would affirm the trial

court's conclusion that Young failed to prove causation.

I write separately, however, because I read the majority to suggest that

Young may have been able to recover had he brought a causation theory other than

reliance. *See* majority at 12-13. But Young could not possibly have established

causation in this case without proving that he had relied on Toyota's

misrepresentation. And I do not read our precedent to suggest otherwise.

1

In *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, we explained that "where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, our case law establishes that there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury." 162 Wn.2d 59, 83, 170 P.3d 10 (2007). "A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Id.* at 84.

In *Indoor Billboard*, we did explain that proximate cause, and not necessarily reliance, is the touchstone for causation under the CPA. *Id.* at 82-84. But we did not entirely do away with reliance. In a subsequent case, we noted that sometimes "the plaintiff may need to prove reliance to establish causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 59 n.15, 204 P.3d 885 (2009) (citing *Indoor Billboard*, 162 Wn.2d at 84).

This is one of those cases. Young could not establish causation without proving reliance. If he did not rely on Toyota's misrepresentation, then that misrepresentation could not possibly have caused Young any injury. As the majority explains, the trial court, serving as fact finder, found that Young bought the vehicle for reasons unrelated to Toyota's misrepresentation, subsequently learned of Toyota's mistake, and then tried to take advantage of the situation.

Majority at 11. The misrepresentation did not cause Young to do anything at all; Toyota's acknowledgement of its mistake caused him to sue. Under no theory of causation (short of eliminating the causation element altogether) may Young recover.

In sum, I would not imply that Young may have been able to recover under some nonreliance theory of causation. I therefore respectfully concur.