IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| City of Yakima, | ) | |
| | ) | No.  37287-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Real Property Known as 508 S. 10th | ) | UNPUBLISHED OPINION |
| Street, located in the City of Yakima, WA, | ) | |
| | ) | |
| Defendant in rem, | ) | |
| | ) | |
| Federico Campos, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Federico Campos is the title holder of the city of Yakima

(City) residence at issue in this 2016 civil forfeiture proceeding.  He was incarcerated at

the time of the 2019 trial and failed to attend it in person or through counsel.  Patricia

Hansen, who had lived with Mr. Campos at the residence, claimed an interest in the

property and appeared pro se.  The trial court found her not to be credible, found that

only Mr. Campos had an interest in the property, and found that the City proved a basis

for civil forfeiture against the property.

No. 37287-1-III
*City of Yakima v. 508 S. 10th St.*

Mr. Campos alone appeals. He challenges the sufficiency of the evidence, the trial

court's proceeding with a trial in his absence, and the unavailability of a verbatim report

of proceedings for appeal, which he contends violates his right to due process. We affirm

on the basis that the trial court reasonably proceeded with the 2019 trial, and Mr. Campos

may not vicariously assert a right to evidence sufficiency that is personal to Ms. Hansen.[1]

PROCEDURAL BACKGROUND

The procedural history is based on the clerk's papers, given the lack of a verbatim

report of proceedings of the trial.

In the course of investigating Mr. Campos and the defendant property for drug

distribution activity in March 2016, detectives arranged for a confidential source to make

two purchases of methamphetamine from Mr. Campos at the property. Relying on those

purchases, detectives obtained and executed a search warrant at the property. The

evidence seized during the search included approximately 5.8 pounds of

methamphetamine, 5.4 pounds of heroin, 1.1 pounds of cocaine, and large amounts of

cash located in a safe in the master bathroom of the residence. Two loaded handguns

---

[1] Mr. Campos's failure to take the steps required to provide an adequate record for review could also be a sufficient basis for affirming. But it now appears the court reporter was unable to provide a verbatim report of proceedings when Mr. Campos ordered one because Mr. Campos provided the reporter with the wrong date. Presumably, with a correct date, a report of proceedings could be prepared.

Because there are other sufficient bases for affirming, we need not address whether Mr. Campos should be afforded a further opportunity to obtain a verbatim report of proceedings.

were found in a bedroom in the home. The evidence obtained in the investigation led to Mr. Campos's arrest and prosecution for a federal offense (possession of firearms in furtherance of a drug trafficking crime) and to this civil forfeiture proceeding, which was commenced in May 2016.

The forfeiture action proceeded to a bench trial in September 2019. Patricia Hansen claimed to co-own or have a secured interest in the property and appeared pro se. Mr. Campos failed to appear in person or through counsel. The court heard testimony from two detectives and from Ms. Hansen.

In written findings and conclusions entered thereafter, the court concluded that the defendant property was used for felony deliveries of methamphetamine, heroin, and cocaine; that a substantial nexus existed between the commercial sale of illegal controlled substances and the property; that Mr. Campos and Ms. Hansen had actual knowledge that the property was being used for the manufacture, compounding, processing, delivery, importing or exporting of controlled substances; and that the City had complied with proper procedure, including by properly serving Mr. Campos and Ms. Hansen with a notice of trial. It found that Ms. Hansen's testimony was not credible, and that while she lived at the property, she had no ownership or secured interest in it. It awarded the property to the City.

Mr. Campos appeals.

ANALYSIS

Proceeding pro se, Mr. Campos makes six assignments of error. We can resolve

the appeal by addressing four of them. The trial court did not err by holding the trial in

Mr. Campos's absence, and Mr. Campos may not vicariously assert a right to evidence

sufficiency for four findings of fact that are adverse only to Ms. Hansen. The fact that we

have no verbatim report of proceedings proves inconsequential.

I.      MR. CAMPOS DOES NOT DEMONSTRATE THAT PROCEEDING WITH TRIAL IN HIS
        ABSENCE VIOLATED HIS RIGHT TO DUE PROCESS

Mr. Campos represents in his opening brief that he was not present at the bench

trial because he was incarcerated at the time. He asserts that he informed the court of his

inability to attend and the trial court erred by denying a continuance. He provides no

citation to the record in support.

The City's notice of presentation of findings and conclusions was sent to him at a

federal prison in Oregon, so there is record evidence of his incarceration, but there is no

evidence he requested a continuance. The City denies that he did; it states that the trial

court likely knew of Mr. Campos's incarceration, but "[he] failed to ask the court to

continue the trial so that he could arrange to be present." Br. of Resp't at 8. The City

notes that by the time of trial, three years had already passed since commencement of the

forfeiture action. It represents that Mr. Campos was serving an 80 month (nearly seven

year) sentence.

"[D]ue process generally affords an individual notice and *an opportunity to be heard* when the government deprives the individual of a life, liberty, or property interest." *Tellevik v. 31641 W. Rutherford St.*, 125 Wn.2d 364, 370-71, 884 P.2d 1319 (1994) (*Tellevik* II) (emphasis added) (citing *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 82-83, 838 P.2d 111 (1992) (*Tellvik* I)); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and *afford them an opportunity* to present their objections." *Mullane*, 339 U.S. at 314 (emphasis added).

Mr. Campos does not deny receiving notice of the forfeiture trial. He was represented by counsel initially, and while his lawyer had withdrawn, he had the right to retain new counsel. The forfeiture proceeding had already been stayed or continued at his request or with his agreement for several years. He fails to demonstrate that he made a timely request for a further, reasonable continuance of the trial.

Mr. Campos's mere absence from the trial, without more, is not a basis for reversal. CR 40(a)(5) provides:

> Either party, after the notice of trial, whether given by either party, may bring the issue to trial, and in the absence of the adverse party, unless the court for good cause otherwise directs, may proceed with the case, and take a dismissal of the action, or a verdict or judgment, as the case may require.

No. 37287-1-III
*City of Yakima v. 508 S. 10th St.*

In *Tacoma Recycling, Inc. v. Capitol Material Handling Co.*, 34 Wn. App. 392, 394-95, 661 P.2d 609 (1983), this court held that "CR 40(a)(5) . . . removes absence of an adverse party as an impediment to trial."

A 1985 rule change reinforced the authority of the trial court to proceed with trial notwithstanding a party's absence. *Tacoma Recycling* had construed former CR 52(c) to require that a party who is absent from trial at least receive notice of presentation of findings and conclusions. To reverse that requirement, a proposal was made to add language to the rule providing that persons who fail to appear at trial after notice can be deemed to have waived the right to notice of presentation. Proposed amendment to CR 52(c), 103 Wn.2d at xli (Official Advance Sheet No. 3, Jan. 4, 1985).[2] The rule change was approved by the Supreme Court, effective September 1, 1985. CR 52(c) at 104 Wn.2d 1170 (1985). Between CR 40(a)(5), *Tacoma Recycling*, and CR 52(c), it is clear trial can proceed when a party fails to appear.

---

[2] The proposed revision read:

> **(c) Presentation.** Unless an emergency is shown to exist, <u>or a party has failed to appear at a hearing or trial</u>, the court shall not sign findings of fact or conclusions of law until the defeated party or parties have received 5 days' notice of the time and place of the submission, and have been served with copies of the proposed findings and conclusions. <u>Persons who have failed to appear at a hearing or trial after notice, may, in the discretion of the trial court, be deemed to have waived their right to notice of presentation or previous review of the proposed findings and conclusions.</u>

II.  MR. CAMPOS MAY NOT VICARIOUSLY ASSERT A RIGHT TO EVIDENCE SUFFICIENCY
THAT IS PERSONAL TO MS. HANSEN

In a hearing on a person's claim of ownership or right to possession of property

seized under RCW 69.50.505, the seizing law enforcement agency bears the burden to

establish by a preponderance of the evidence that the property is subject to forfeiture.

RCW 69.50.505(1)(g); *City of Sunnyside v. Gonzalez*, 188 Wn.2d 600, 609, 398 P.3d

1078 (2017).

Following a bench trial, appellate review is limited to determining whether

substantial evidence supports the trial court's findings of fact and, if so, whether the

findings support the conclusions of law.  *Young v. Toyota Motor Sales, U.S.A.*, 9 Wn.

App. 2d 26, 32, 442 P.3d 5 (2019) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114

P.3d 699 (2005)), *aff'd*, 196 Wn.2d 310, 472 P.3d 990 (2020).  "Substantial evidence" is

evidence sufficient to persuade a fair-minded person of the truth of the asserted premise.

*Id.*  We defer to the trial court's determinations of the weight and credibility of the

evidence.  *Id.* (citing *Mueller v. Wells*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016)).

Mr. Campos's first through third assignments of error are to the following trial

court findings of fact:

1.  Claimant Federico Campos is the sole owner and lived in defendant real property known at 508 South 10th Street, Yakima, Washington during all pertinent times of this case.

2.  Claimant Patricia Hansen resides at defendant property but has no ownership interest in defendant property.

3.       Claimant Hansen has no secured interest in the defendant property.

. . . .

31.      Claimant Hansen's testimony was not credible.

Clerk's Papers (CP) at 99, 101.

The City makes a threshold argument that Mr. Campos lacks standing to challenge these findings of fact because they are adverse to Ms. Hansen's interests, not his. While we do not analyze it as an issue of standing, we agree that Ms. Hansen's right to challenge the sufficiency of evidence to support findings that are adverse to her is a personal right that cannot be asserted vicariously by Mr. Campos.

"Standing" is a "party's right to make a legal claim or seek judicial enforcement of a duty or right." BLACK'S LAW DICTIONARY 1695 (11th ed. 2019). The realm in which a party's "standing" to enforce rights ordinarily operates is cases in which a plaintiff seeks to enforce a public right, not a private right held by the plaintiff individually. *See* Ann Woolhandler & Caleb Nelson, *Does History Defeat Standing Doctrine?*, 102 MICH. L. REV. 689, 693 (2004); *and see Spokeo, Inc. v. Robins*, 578 U.S. 330, 343-47, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (Thomas, J., concurring). The separation of powers concerns that underlie a "standing" requirement in public rights decisions "are not implicated when private individuals sue to redress violations of their own private rights." *Spokeo*, 578 U.S. at 347. It is when public rights are implicated that "standing doctrine keeps courts out of political disputes by denying private litigants the right to test the

8

abstract legality of government action." *Id. And see id.* at 352 (Ginsburg, J., dissenting)

(standing requirements bar complaints in which the injury relied on by the plaintiff is the

public's interest in the administration of the law rather than a particular right of their

own).

Justice Scalia observed in *Powers v. Ohio* that the United States Supreme Court's

concept of third-party standing does not even operate in the context of personal rights:

> [W]e do not even *recognize* third-party standing in the litigation context—
> that is, permit a civil or criminal litigant to upset an adverse judgment
> because the process by which it was obtained involved the violation of
> someone else's rights—even when the *normal* injury-in-fact standard is
> amply met. If, for example, the *only* evidence supporting a conviction (so
> that the causality is not remotely speculative) consists of the fruit of a
> search and seizure that violated a third party's Fourth Amendment [to the
> United States Constitution] rights, we will not permit those rights to be
> asserted by the defendant. *See, e.g.*, *Rawlings v. Kentucky*, 448 U.S. 98,
> 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *United States v. Payner*, 447 U.S.
> 727, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980); *Rakas v. Illinois*, 439 U.S.
> 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). We would reach the same
> result with respect to reliable evidence obtained in violation of another
> person's Fifth Amendment right against self-incrimination, *cf. id.*, at 140,
> n.8, 99 S. Ct., at 428, n.8. Likewise (assuming we follow the common law)
> with respect to evidence introduced in violation of someone else's
> confidentiality privilege. *See, e.g.*, *Commonwealth v. McKenna*, 206 Pa.
> Super. 317, 322, 213 A.2d 223, 226 (1965); *Butz v. State*, 221 Md. 68, 73,
> 156 A.2d 423, 426 (1959); see generally *Annot.*, 2 A.L.R.2d 645 (1948).
> These cases can, to be sure, be explained on the basis that the rights in
> question are "personal," rather than on the basis of lack of third-party
> standing, but the result comes to the same.

499 U.S. 400, 428-29, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (Scalia, J., dissenting).

Washington case law is in accord. In *State v. Francisco*, for example, this court held that constitutional privacy rights are personal rights that cannot be vicariously asserted. 107 Wn. App. 247, 252, 26 P.3d 1008 (2001) (citing *State v. Foulkes*, 63 Wn. App. 643, 647, 821 P.2d 77 (1991)). "Whether a particular defendant is entitled to seek the remedy of exclusion for evidence obtained by an illegal search or seizure is sometimes characterized as whether the party has 'standing' to qualify for Fourth Amendment protection. But 'the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment' rather than on any theoretically separate, but invariably intertwined, concept of standing." *Id.* (citation omitted) (quoting *Rakas*, 439 U.S. at 139).

In affirming that a criminal defendant could not claim that a physician-patient privilege required exclusion of communications between his victim and her doctor, our Supreme Court did not apply standing analysis, but reasoned that the privilege is intended for the benefit of the patient. *State v. Boehme*, 71 Wn.2d 621, 636, 430 P.2d 527 (1967). This court has similarly held that the Fifth Amendment privilege against self-incrimination is a personal right of a witness and cannot be claimed by a party on behalf of anyone but herself. *Seventh Elect Church in Israel v. Rogers*, 34 Wn. App. 91, 96, 660 P.2d 290 (1983).

No. 37287-1-III
*City of Yakima v. 508 S. 10th St.*

The same reasoning applies here. Ms. Hansen's right to challenge whether sufficient evidence supported the trial court's findings 1-3 and 31 is personal. It cannot be asserted vicariously by Mr. Campos.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.

11